AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

for the

Southern District of California

JUL 1 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One UMX phone; Model MXG401;
IMEI# 353650085492341

)
)
)
)
)
)

Case No. **19MJ2864**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 | Importation of a Controlled Substance; |

The application is based on these facts:

See attached Affidavit of Special Agent Rainier Mendoza

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Rainier Mendoza, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/10/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. William V. Gallo
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

One UMX phone; Model MXG401; IMEI# 353650085492341;

("TARGET DEVICE")



currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below.  The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019, up to and including March 14, 2019.

    a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Rainier Mendoza, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1.     I make this affidavit in support of an application for a warrant to search the following electronic devices:

a)     One UMX phone; Model MXG401; IMEI# 353650085492341 **(Target Device)**, described in Attachment A (incorporated herein by reference);

seized from Adrianne BARRERA on March 14, 2019, incident to her arrest for importation of Methamphetamine at the San Ysidro, California Port of Entry (POE) and which is currently in the possession of Homeland Security Investigations at 2255 Niels Bohr Court, San Diego, CA 92154.

2.     I seek authority to search the Target Device for evidence from January 1, 2019, through March 14, 2019 of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference.)

3.     The information contained in this affidavit is based upon my experience and training, and in consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case.  Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

//

//

//

### **EXPERIENCE AND TRAINING**

4.      I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI").  I have been so employed since December 2016.  Prior to my employment with HSI, I was employed as a Border Patrol Agent with the United States Border Patrol from July 2008 until December 2016.  In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

5.      I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code.  I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC §§ 952 and 960, Importation of a Controlled Substance.  My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

6.      Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

7. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can

and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

       a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

       b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

       c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

       d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

       e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

1         f.     tending to place in context, identify the creator or recipient of, or

2 establish the time of creation or receipt of communications, records, or data involved in the

3 activities described above.

4 **FACTS SUPPORTING PROBABLE CAUSE**

5      9.    On March 14, 2019, at approximately 12:40 p.m., Adrianne BARRERA, a

6 Lawful Permanent Resident, applied for admission into the United States through the San

7 Ysidro Port of Entry (POE) in California.  BARRERA was the driver and registered owner

8 of a black 2002 Ford Expedition bearing California plate 7YAX685.  Customs and Border

9 Protection Officer (CBPO) T. Desmond was conducting Mobile Field Force operations and

10 targeted the black 2002 Ford Expedition.  CBPO T. Desmond observed BARRERA acting

11 in a peculiar manner.  BARRERA was constantly looking in her rear view mirror, while

12 talking to her minor daughter in the back seat, was overly talkative, was unable to sit still

13 in her seat, and was swallowing so hard that CBPO T. Desmond could observe from outside

14 the vehicle.  As BARRERA and the vehicle approached CBPO T. Desmond, he observed

15 more nervous behavior from BARRERA.  BARRERA was moving her hands erratically,

16 from touching the door, to holding her hands together, and to placing them between her

17 legs.  BARRERA avoided eye contact with CBPO T. Desmond during the encounter.

18     10.    CBPO T. Desmond opened the hood of the black 2002 Ford Expedition and

19 observed tampering around the engine.  CBPO T. Desmond saw tool marks on several bolts

20 and observed multiple missing screws.  CBPO T. Desmond also noticed that the spare tire

21 did not match the vehicle.  CBPO T. Desmond tapped on the spare tire and noticed that it

22 felt dense.  BARRERA was detained and the vehicle was sent to the secondary inspection

23 area for further processing.

24     11.    In secondary inspection, the vehicle was screened by a Narcotics Human

25 Detector Dog (NHDD).  While inspecting the vehicle, the NHDD alerted to an odor

26 emanating from the driver's side front tire and spare tire.  The vehicle was screened in the

27 Z-Portal and anomalies were discovered in the fenders and rear quarter panels.  CBPO C.

28 Crane conducted a seven-point inspection of the vehicle.  CBPO Crane discovered packages

5

1  with white crystal substance that tested positive for methamphetamine in the rear quarter

2  panels, front fenders, and spare tire.   During inspection of BARRERA's vehicle U.S.

3  Customs and Border Protection Officers found and seized eighty-two (82) packages

4  weighing approximately 88.40 pounds (40.10 kilograms) of methamphetamine.

5        12.   Officers placed BARRERA under arrest[1] for violating Title 21 United States

6  Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance.   BARRERA

7  is charged with importation of a controlled substance (methamphetamine) in violation of

8  Title 21, United States Code sections 952 and 960 in the Southern District of California in

9  case number 19-CR-1683-AJB.   A trial in this case is set for September 24, 2019, in front

10  of the Honorable Anthony J. Battaglia.

11        13.   On March 15, 2019, during a secondary sweep of the black 2002 Ford

12  Expedition, CBPO Crane found 20 additional packages weighing approximately 21.74

13  pounds (9.86 kilograms) of methamphetamine inside the rear quarter panel and middle

14  console.   CBPO Crane also located the **Target Device** inside the engine compartment.

15        14.   On March 14, 2019, at approximately 4:23 p.m., BARRERA was advised of

16  her *Miranda* rights and elected to make a statement.   BARRERA stated she lives in

17  Huntington Park, California.   BARRERA explained she is on public assistance and receives

18  food stamps.   BARRERA stated she is unemployed and claimed to earn money by cleaning

19  houses.   BARRERA stated she purchased the Expedition at an auction for approximately

20  $2,200 USD a couple years prior.

21        15.   BARRERA said that she has not had the vehicle for a while because it "broke

22  down in Tijuana" and her friend, "Mary," told her that she has a relative who is a mechanic.

23  BARRERA stated that she does not know the last name of "Mary" but that Mary is a close

24  friend.  Mary referred her to a mechanic she knows as "Supervisor."  BARRERA stated she

25  does not know the real name of the "Supervisor."

---

27  [1] Another cell phone was found and seized from BARRERA subsequent to her arrest. That
   cell phone was downloaded and the United States is not seeking a search warrant for that
28  device.  The United States is not relying on any information obtained from the download of
   the other cell phone to establish probable cause to search the **Target Device**.

16.    BARRERA said that the "Supervisor" worked at an auto repair shop in Tijuana, Mexico.  BARRERA claimed that she did not trust the "Supervisor" and would not be "comfortable" being alone with him.  Mary acted as a broker for a transaction between BARRERA and the "Supervisor" for the repairs to be completed on Expedition. BARRERA stated that the "Supervisor" took possession of Expedition approximately one month prior.  She said that Expedition had to be towed to the repair shop, but she does not know where the auto repair shop is located.

17.    BARRERA claimed that she stayed home all day on Wednesday, March 13, 2019, with her daughter in Tijuana, Mexico.   BARRERA stated that she received her truck at 10:00 a.m. on March 14, 2019.  BARRERA stated that "Mary" and the "Supervisor" were both in the vehicle when it was delivered to her at her residence in Tijuana.

18.    A review of the crossing history for the smuggling vehicle indicates that in 2019, the Ford Expedition's only crossing into the United States was on March 14, 2019, the day of BARRERA's arrest.[2]

19.    BARRERA's personal crossing history reveals that in 2019, she crossed into the United States from Mexico as a pedestrian at San Ysidro Port of Entry on March 4, 2019, February 2, 2019, and January 1, 2019.

20.    Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Device** was used to coordinate the importation of methamphetamine into the United States.  Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can be used as a Global Positioning Device (GPS) by Drug Trafficking Organizations (DTO's) to track the location of smuggled drugs in real-time.  The cellular/mobile telephone may be concealed within natural voids or aftermarket compartments within a vehicle used for drug smuggling.  The GPS information

---

[2] In 2018, Barrera crossed in the Expedition twelve times: on June 10, 2018, June 3, 2018, May 12, 2018, May 6, 2018, April 29, 2018, April 13, 2018, March 25, 2018, March 21, 2018, March 17, 2018, February 16, 2018, February 2, 2018, and January 13, 2018.

7

can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Alternatively, it is possible that a member of the DTO inadvertently left the **Target Device** in the engine compartment while loading the drugs into the vehicle.

21. In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** may identify the persons involved in narcotics trafficking activities, including BARRERA. Furthermore, it is likely the **Target Device** may contain incriminating information pertaining to the smuggling event. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of BARRERA, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

22. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. This planning often includes coordination on crossing the border to develop a crossing history or pattern. In my professional experience, narcotics trafficking activities involve planning and coordination in the weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their cargo. In this case, the vehicle had no crossings in 2018 until the day of BARRERA's arrest on March 14, 2019. BARRERA's first pedestrian crossing in 2019 was on January 1, 2019. The evidence supports that probable cause exists to search the **Target Device** for information dating back to January 1, 2019. This date is approximately two and a half months prior to BARRERA's crossing in the vehicle that lead to her arrest.

8

1

2                                    **METHODOLOGY**

3        23.    It is not possible to determine, merely by knowing the cellular/mobile

4 telephone's make, model and serial number, the nature and types of services to which the

5 device is subscribed and the nature of the data stored on the device. Cellular/mobile devices

6 today can be simple cellular telephones and text message devices, can include cameras, can

7 serve as personal digital assistants and have functions such as calendars and full address

8 books and can be mini-computers allowing for electronic mail services, web services and

9 rudimentary word processing.  An increasing number of cellular/mobile service providers

10 now allow for their subscribers to access their device over the internet and remotely destroy

11 all of the data contained on the device.  For that reason, the device may only be powered in

12 a secure environment or, if possible, started in "flight mode" which disables access to the

13 network.  Unlike typical computers, many cellular/mobile telephones do not have hard

14 drives or hard drive equivalents and store information in volatile memory within the device

15 or in memory cards inserted into the device.  Current technology provides some solutions

16 for acquiring some of the data stored in some cellular/mobile telephone models using

17 forensic hardware and software.  Even if some of the stored information on the device may

18 be acquired forensically, not all of the data subject to seizure may be so acquired.  For

19 devices that are not subject to forensic data acquisition or that have potentially relevant data

20 stored that is not subject to such acquisition, the examiner must inspect the device manually

21 and record the process and the results using digital photography.  This process is time and

22 labor intensive and may take weeks or longer.

23        24.    Following the issuance of this warrant, I will collect the subject cellular/mobile

24 telephones and subject them to analysis.  All forensic analysis of the data contained within

25 the telephones and memory cards will employ search protocols directed exclusively to the

26 identification and extraction of data within the scope of this warrant.

27        25.    Based on the foregoing, identifying and extracting data subject to seizure

28 pursuant to this warrant may require a range of data analysis techniques, including manual

                                              9

1 | review, and, consequently, may take weeks or months. The personnel conducting the
2 | identification and extraction of data will complete the analysis within ninety (90) days,
3 | absent further application to this court.

4 | ### CONCLUSION

5 | 26.   Based on all of the facts and circumstances described above, there is probable
6 | cause to conclude that the **Target Device** was used to facilitate violations of Title 21, United
7 | States Code, Section(s) 952 and 960.

8 | 27.   Because the **Target Device** was seized during the investigation of
9 | BARRERA's smuggling activities and has been securely stored, there is probable cause to
10 | believe that evidence of illegal activities committed by BARRERA continues to exist on
11 | the **Target Device**. As stated above, I believe that the date range for this search is from
12 | January 1, 2019, through March 14, 2019.

13 | 28.   WHEREFORE, I request that the court issue a warrant authorizing law
14 | enforcement agents and/or other federal and state law enforcement officers to search the
15 | items described in Attachments A- and the seizure of items listed in Attachments B, using
16 | the methodology described above.

17 | I swear the foregoing is true and correct to the best of my knowledge and belief.

Rainier Mendoza
Special Agent

22 | Subscribed and sworn to me before this _10_ day of July, 2019.

The Honorable William V. Gallo
United States Magistrate Judge

## **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

One UMX phone; Model MXG401; IMEI# 353650085492341;

("TARGET DEVICE")



currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below.  The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019, up to and including March 14, 2019.

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.